UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RONALD L. ROSE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:23-cv-01822-JMS-KMB |
| JOHN HEFLIN, et al., | ) ) ) |
| Defendants. | ) |

**Order Granting in Part Motion for Preliminary Injunction**

Plaintiff Ronald Rose alleges in this lawsuit that his medical providers have been deliberately indifferent to his need for asthma treatment. Mr. Rose has filed a motion for a preliminary injunction requesting that the defendants grant his request to be seen by pulmonary and allergy specialists to treat his alleged severe asthma and allergies. He also requests that the defendants provide him specific medications and treatments to treat his conditions. For the following reasons, Mr. Rose's motion for a preliminary injunction is **GRANTED IN PART AND DENIED IN PART**.

**I. Factual Background**

On October 24, 2022, Mr. Rose was seen by Dr. Leena Padhye, MD, with Family Allergy & Asthma, for treatment of shortness of breath related to his underlying diagnosis of asthma and associated allergies. Dkt. 45-1 at 1-2. Dr. Padhye suggested the following prescriptions: Spiriva, Cetirizine Hcl, Azelastine 0.15% Nasal Spray, and Nucala. *Id.* at 2. Mr. Rose saw a nurse two days later for difficulty breathing. Dkt. 55-1 at 1. On exam, his oxygen saturation level was 96% with pre-nebulizer treatment peak flow at 440. *Id.* At the time, Mr. Rose's asthma and allergy medication included AirDuo, Albuterol, Nasacort nasal spray, and Singulair. *Id.* at 2. Dr. Heflin reviewed the

medical records from Dr. Padhye and submitted a Formulary Exception Request ("FER") for Nucala injections every four weeks. *Id.* Otherwise, the Alternative Treatment Plan ("ATP") was to continue his current medications. *Id.* The FER for Nucala was ultimately rejected.

On December 6, 2022, Dr. Heflin noted that Mr. Rose's symptoms had stabilized, and he was doing well with his current inhalers. Doc. 55-1 at 3-4. On January 5, 2023, Dr. Heflin again noted that symptom relief was achieved with his current medications. *Id.* at 5-6. When Mr. Rose saw Dr. Heflin on January 31, 2023, however, Dr. Heflin noted that his symptoms had worsened and were very severe. Dkt. 1-1 at 88. Mr. Rose was therefore sent to see pulmonology specialist, Dr. Moayyed Moallem, on March 3, 2023. *Id.* at 91. Dr. Moallem recommended, among other things, adding Spiriva and Flonase medications. *Id.* at 94. Dr. Moallem noted the prior recommendation for Nucala injections but that the injections "seem to be unrealistic while incarcerated." *Id.*

Dr. Heflin saw Mr. Rose on March 17, 2023, and he noted that his symptoms had stabilized, and that Mr. Rose was getting symptom relief with his current medications. Dr. Heflin noted Dr. Moallem's recommendations. Dkt. 55-1 at 7-8.

Mr. Rose saw a nurse on April 25, 2023, for a scheduled breathing treatment and was coughing up bloody sputum. Dkt. 1-1 at 122-23. He saw a nurse again on April 30, because he had been coughing all night and coughing up blood. *Id.* at 125. Mr. Rose underwent a pulmonary function test on May 11, 2023, which indicated a "very severe obstruction" *Id.* at 130. On June 25, 2023, nursing notes again indicated that Mr. Rose was coughing up blood-tinged sputum. *Id.* at 131. Mr. Rose saw Dr. Heflin again a few days later. Dkt. 55-1 at 9-10. Dr. Heflin noted that his symptoms persisted, but that symptom relief was achieved with the current medications. *Id.* Dr.

Heflin prescribed prednisone for upper airway inflammation because Mr. Rose was still coughing up blood. *Id.*

During nursing visits on July 10th, 14th, 17th, and 26th, no complaints were noted. Dkt. 55-1 at 11-14. On the 24th, Dr. Heflin submitted a FER for Nucala based on his failures with other medications. Dkt. 45-1 at 5. That request was denied. On the 27th, Mr. Rose requested a breathing treatment. Dkt. 55-1 at 15-17. His oxygen saturation at the time was 98% and his peak flow was 250. *Id.* After treatment his peak flow increased to 350. *Id.* He was noted to have tolerated the procedure well with good lung sounds that were clear and even. *Id.*

Dr. Heflin saw Mr. Rose on August 9, 2023, noting that his symptoms had worsened and he was coughing up blood. *Id.* at 18-21. Dr. Heflin ordered a chest x-ray, the results of which came back clear, and a CT scan of his chest was ordered, which revealed "no acute process of the chest or upper abdomen." *Id.*; dkt. 45-1 at 6. Nebulizer treatments were increased to twice daily. Dkt. 55-1 at 22.

On August 14, 2023, Mr. Rose reported to nursing that he was doing better with his breathing and his peak flow readings after the change in nebulizer treatment. Dkt. 55-1 at 21-23. Between August 14, 2023, and September 12, 2023, Mr. Rose was seen by the nursing staff for regularly-scheduled breathing treatments twice daily. During these sessions, Mr. Rose's oxygen saturation was routinely over 95% and his peak flow numbers routinely improved with treatment. Dkt. 55-1 at 24-63. However, the defendants contend that Mr. Rose refused to undergo his breathing treatments on four occasions, *id.* at 64-67, while Mr. Rose contends that he was unable to go because he did not have the proper clothing, dkt. 58 at 5.

Between September 12, 2023, and November 8, 2023, Mr. Rose continued to be seen by the nursing staff for routine nebulizer treatments. Like the previous treatments in August, Mr.

3

Rose's oxygen saturation was routinely above 95% and his post treatment peak flow was above 400. *Id.* at 70-115. On September 27, 2023, Mr. Rose requested that his twice-daily scheduled breathing treatments be reduced such that he would only have a treatment scheduled for the evening, with morning treatment relegated to an "as needed" basis. *Id.* at 129.

Dr. Heflin most recently saw Mr. Rose on November 8, 2023. *Id.* at 130-32. Dr. Heflin noted that Mr. Rose's symptoms have stabilized, and symptom relief was achieved with his current medications. *Id.* at 130-32.

Mr. Rose saw outside specialist Dr. Padhye again on January 29, 2024. Dkt. 45-1 at 9-13. Dr. Padhye noted that Mr. Rose was not taking Azelastine, Cetirizine, or Spiriva, which had previously been recommended. *Id.* at 9. She recommended that he start Cetirizine, switch to Fluticasone, start Astelin, and she prescribed Tudorza. *Id.* at 12-13.

**B. Review by Dr. Stephanie Riley**

Dr. Stephanie Riley, who currently serves as the Statewide Medical Director for Centurion of Indiana, reviewed Mr. Rose's care and treatment in December of 2023. Dkt. 55-2. Dr. Riley believes that an appropriate alternative for the recommended Spiriva would be the medication Tudorza, an anticholinergic inhaler. *Id.* Dr. Riley states that Tudorza could be prescribed, in addition to the Airduo and Albuterol inhalers, if Mr. Rose is not seeing appropriate control with the use of these currently prescribed medications. *Id.* As to his request for Cetirizine and Azelastine, Dr. Riley notes that Singulair and Nasacort are suitable alternative treatments for these medications. *Id.* With respect to Mr. Rose's request to see an allergist, Mr. Rose has since seen an allergist who prescribed the Tudorza inhaler. Dkt. 45-1 at 13. With respect to Mr. Rose's request for a follow up appointment with a pulmonologist, Dr. Riley recommends further follow up with

4

a pulmonologist only if further testing is necessary that cannot be performed on site. Dkt. 55-2 at 3-4. To date, no such recommendation has been made. *Id.*

## II. Preliminary Injunction Standard

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). To obtain a preliminary injunction a plaintiff first must show that: "(1) without this relief, [he] will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) [he] has some likelihood of prevailing on the merits of [his] claims." *Speech First, Inc. v. Killen*, 968 F.3d 628, 637 (7th Cir. 2020). If the plaintiff meets these threshold requirements, "the court then must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id.* "[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490. 501 (7th Cir. 2020) (cleaned up).

## III. Discussion

As discussed below, Mr. Rose has demonstrated the elements to support injunctive relief.

### A. Likelihood of Success on the Merits

First, a party seeking injunctive relief must show a likelihood of success on the merits of his claim. "A movant's showing of likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020) (quotation marks omitted). A "better than negligible" likelihood of success is not enough. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762−63 (7th Cir. 2020). "A 'strong' showing ... does not mean proof by a preponderance .... But it normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.*

5

The Court assumes for purposes of the motion for a preliminary injunction, and the defendants do not dispute, that Mr. Rose's asthma is a serious medical need. The second element of deliberate indifference requires Mr. Rose to show that his medical providers "either act[ed] or fail[ed] to act in disregard of that risk." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations and citations omitted). Mr. Rose must demonstrate that the defendants made a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). *See also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

The evidence before the Court at this time indicates that Mr. Rose has complained of asthma, breathing problems, and coughing up blood for many years and that specialists have recommended treatments that have not been provided. *See generally* Part II. Specifically, in October of 2022, Dr. Padhye suggested Spiriva, Cetirizine Hcl, Azelastine 0.15% Nasal Spray, and Nucala to treat Mr. Rose's asthma and allergies, but these medications were not provided. *See* dkt. 45-1 at 2. Indeed, it does not appear that his treatment regimen changed at all. *See* dkt. 55-1 at 2. Mr. Rose later saw a pulmonary specialist who, like the allergist, recommended Spiriva and also Flonase. Dkt. 1-1 at 94. Again, Mr. Rose's medications were not changed. After Mr. Rose filed his motion for a preliminary injunction, defendant Dr. Riley reviewed his records and has concluded that a Tudorza inhaler can be prescribed and that Singulair and Nasacort are suitable alternatives for the requested Cetirizine and Azelastine. Dkt. 55-2. It is unclear from the records, however, whether Tudorza has been provided to Mr. Rose.

In short, Mr. Rose has continued to complain of severe asthma symptoms, with little changes to his treatment, despite the recommendations of specialists. Although the failure to follow a specialist's recommendations may not necessarily amount to deliberate indifference, a jury could "infer conscious disregard of a risk from a defendant's decision to ignore instructions from a specialist." *Zaya v. Sood*, 836 F.3d 800, 806 (7th Cir. 2016). For this reason, Mr. Rose has demonstrated a reasonable likelihood of success on the merits of his claims.

### B. Irreparable Harm and Inadequate Remedies at Law

Mr. Rose must also show that he will suffer irreparable harm and that his legal remedies are inadequate. Irreparable harm is "harm that 'cannot be repaired' and for which money compensation is inadequate." *Orr*, 953 F.3d at 502 (quoting *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997)). Mr. Rose must show "that he will *likely* suffer irreparable harm absent obtaining preliminary injunctive relief." *Id.* (cleaned up). Similarly, to show that his legal remedies are inadequate, he must show "that any award would be seriously deficient as compared to the harm suffered." *Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1046 (7th Cir. 2017).

The defendants argue that Mr. Rose cannot support these elements because he has not shown that his lung function has deteriorated because he has not received the treatment recommended by the specialists. But Mr. Rose has presented evidence that he has had trouble breathing and was coughing up blood through much of 2023. This is enough to show that Mr. Rose is suffering irreparable harm and that purely legal remedies would be inadequate.

### C. Balance of Harms

Because Mr. Rose has satisfied the threshold elements of injunctive relief, "the court weighs the irreparable harm that the moving party would endure without the protection of the

7

preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018).

Here, the balance of harms tips in Mr. Rose's favor. He is suffering from serious breathing problems and, based on the record before the Court, he does not appear to be receiving sufficient treatment. Additionally, the vindication of Mr. Rose's constitutional rights serves the public interest. *Jackson v. Wexford of Indiana, LLC*, No. 1:19-cv-3141-JMS-TAB, 2019 WL 5566442, at *3 (S.D. Ind. Oct. 29, 2019) ("More generally, the vindication of constitutional rights serves the public interest.") (collecting cases).

### D. Scope of Relief

Based on the evidence before the Court, all applicable factors weigh in favor of preliminary injunctive relief. Mr. Rose asks to be referred to specialists and that specific medications be provided.

Courts must be cautious when granting preliminary injunctive relief. *Tully v. Okeson*, 977 F.3d 608, 612 (7th Cir. 2020) ("A preliminary injunction is an extraordinary remedy.") (internal quotations and citations omitted); *see also Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) ("A preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.") (internal quotations and citations omitted). That is particularly so when the plaintiff is requesting that Court order the defendant to take a particular action. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) ("Mandatory preliminary injunctions—those requiring an affirmative act by the defendant—are 'ordinarily cautiously viewed and sparingly issued.'") (internal quotations and citations omitted).

The Prison Litigation Reform Act ("PLRA") adds an additional layer: "Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). The Act reinforces the principle that prison administrators have substantial discretion over the institutions they manage. *Rasho v. Jeffreys*, 22 F.4th 703, 711 (7th Cir. 2022); *see also Scarver v. Litscher*, 434 F.3d 972, 976 (7th Cir. 2006) ("Federal judges must always be circumspect in imposing their ideas about civilized and effective prison administration on state prison officials. The Constitution does not speak with precision to the issue of prison conditions[.]")

Although Mr. Rose requests both specific medications and further specialist consultation, he has seen an asthma and allergy specialist this year and he saw a pulmonologist in early 2023. Dr. Riley does not believe that another visit with a pulmonologist is needed unless specific testing is required. Dkt. 55-2 at 3. Dr. Riley agrees, however, that a Tudorza inhaler could help treat Mr. Rose's asthma. *Id.* Because it is unclear from the record whether Mr. Rose has been provided this inhaler, injunctive relief in the form an order that he receive it is appropriate to balance Mr. Rose's need for medical care in the least intrusive way possible as required by the PLRA.

## IV. Conclusion

For the reasons discussed above, Mr. Rose's motion for injunctive relief, dkt. [45], is **GRANTED** to the extent that the defendants will be directed to provide him with a Tudorza inhaler prescription. It is **DENIED** to the extent that Mr. Rose seeks further specialist consultation. Pursuant to Federal Rule of Civil Procedure 65(d)(1) and *MillerCoors LLC v. Anheuser-Busch Cos.*, 940 F.3d 922 (7th Cir. 2019), the Court will enter the terms of the preliminary injunction set

9

forth in a separate document. This ruling does not preclude Mr. Rose from seeking further injunctive relief if he believes it is necessary.

**IT IS SO ORDERED.**

Date: 7/2/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

RONALD L. ROSE
213041
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

All Electronically Registered Counsel