UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RONALD L. ROSE, | ) |
|         Plaintiff, | ) |
|     v. | ) No. 1:23-cv-01822-JMS-KMB |
| JOHN HEFLIN, et al., | ) |
|         Defendants. | ) |

**Order Granting in Part Motion for Preliminary Injunction**

Plaintiff Ronald Rose alleges in this lawsuit that his medical providers have been deliberately indifferent to his need for treatment for his asthma and allergies. Mr. Rose previously filed a motion for a preliminary injunction asking that the Court order the defendants to send him to pulmonary and allergy specialists to treat these conditions. The Court granted that request to the extent that the defendants were directed to provide him with the inhaler prescribed to him. Dkt. 75. Mr. Rose has renewed his motion for a preliminary injunction again requesting that the defendants grant his request to be seen by pulmonary and allergy specialists to treat his alleged severe asthma and allergies. He also requests that the defendants provide him specific medications and treatments to treat his conditions. For the following reasons, Mr. Rose's motion for a preliminary injunction is **GRANTED IN PART**.

**I. Factual Background**

Mr. Rose suffers from asthma and allergies. He saw Dr. Leena Padhye, MD, with Family Allergy & Asthma, on October 24, 2022, for treatment of these conditions. Dkt. 45-1 at 1-2. Dr. Padhye suggested the following prescriptions: Spiriva, Cetirizine Hcl, Azelastine 0.15% Nasal Spray, and Nucala. *Id.* at 2. Mr. Rose saw a nurse two days later for difficulty breathing. Dkt. 55-

1 at 1. Dr. Heflin reviewed the medical records from Dr. Padhye and submitted a Formulary Exception Request ("FER") for Nucala injections every four weeks. *Id.* Otherwise, the Alternative Treatment Plan ("ATP") was to continue his current medications. *Id.* The FER for Nucala was ultimately rejected. *Id.*

On November 16, Mr. Rose saw Dr. Heflin who noted that Mr. Rose's "symptoms have worsened and occur frequently." Dkt. 1-1 at 75. He saw Dr. Heflin again on January 19, 2023, and Dr. Heflin noted, "[t]he symptoms have worsened. The severity level is very severe." *Id.* at 81. When Mr. Rose saw Dr. Heflin again on January 31, 2023, Dr. Heflin again noted that his symptoms had worsened and were very severe. Dkt. 1-1 at 88. Mr. Rose was therefore sent to see pulmonology specialist, Dr. Moayyed Moallem, on March 9, 2023. *Id.* at 91. Dr. Moallem recommended, among other things, adding Spiriva and Flonase medications. *Id.* at 94. Dr. Moallem noted the prior recommendation for Nucala injections but that the injections "seem to be unrealistic while incarcerated." *Id.*

Dr. Heflin saw Mr. Rose on March 17, 2023, and he noted that his symptoms had stabilized, and that Mr. Rose was getting symptom relief with his current medications and noted that he would "continue current inhalers, nasacort, and singulair." *Id.* at 100. Dr. Heflin noted Dr. Moallem's recommendations for Nucala allergy shots and transfer to a climate-controlled facility and noted that he would submit those requests. *Id.* at 99. But there is no evidence that he did submit those requests.

Mr. Rose saw a nurse on April 9, 2023, for a breathing treatment. *Id.* at 102. She noted that he was "coughing out blood tainted sputum." *Id.* at 103. It was again noted that he was coughing up bloody sputum when he saw the nurse on April 25, 2023, for a breathing treatment. *Id*. at 122-23. He saw a nurse again on April 30, because he had been coughing all night and coughing up

blood. *Id.* at 125. Mr. Rose submitted a healthcare request on May 1, stating, "I am still coughing blood daily. I would like to be set up to take a sputum test to see if there is any bacteria growing in my lungs." *Id.* at 167.

On June 25, 2023, nursing notes again indicated that Mr. Rose was coughing up blood-tinged sputum. *Id.* at 131. Mr. Rose saw Dr. Heflin again a few days later. *Id.* at 133-35. Dr. Heflin noted that his symptoms persisted, but that symptom relief was achieved with the current medications. *Id.* Dr. Heflin prescribed prednisone for upper airway inflammation because Mr. Rose was still coughing up blood. *Id.*

Dr. Heflin saw Mr. Rose on August 9, 2023, noting that his symptoms had worsened and he was coughing up blood. Dkt. 21-1 at 18-21. Dr. Heflin ordered a chest x-ray, the results of which came back clear, and a CT scan of his chest revealed "no acute process of the chest or upper abdomen." *Id.*; dkt. 45-1 at 6. Nebulizer treatments were increased to twice daily. Dkt. 55-1 at 22.

Mr. Rose saw outside specialist Dr. Padhye again on January 29, 2024. Dkt. 45-1 at 9-13. Dr. Padhye noted that Mr. Rose was not taking Azelastine, Cetirizine, or Spiriva, which had previously been recommended. *Id.* at 9. She recommended that he start Cetirizine, switch to Fluticasone, start Astelin, and she prescribed Tudorza. *Id.* at 12-13.

Mr. Rose then filed his previous motion for a preliminary injunction on March 13, 2024. Dkt. 45. The Court granted that motion to the extent that the defendants were ordered the provide him with the prescribed Tudorza inhaler. Dkt. 75. The defendants reported that the inhaler had been provided to Mr. Rose on June 27, 2024. Dkt. 78. In the meantime, Mr. Rose renewed his motion for a preliminary injunction, asking the Court to direct that he been seen again by a

pulmonary and asthma specialist and that the defendants follow the specialist's directions. Dkt. 79. At that time, Mr. Rose had not received the Court's previous order.

Mr. Rose does not dispute that he has received the Tudorza inhaler. But he argues that he still struggles with asthma and allergies and contends that he has a staph infection in his lungs that the defendants have left untreated.

## II. Preliminary Injunction Standard

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). To obtain a preliminary injunction a plaintiff first must show that: "(1) without this relief, [he] will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) [he] has some likelihood of prevailing on the merits of [his] claims." *Speech First, Inc. v. Killen*, 968 F.3d 628, 637 (7th Cir. 2020). If the plaintiff meets these threshold requirements, "the court then must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id.* "[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) (cleaned up).

## III. Discussion

The motion for injunctive relief, applying the appropriate test for ruling is addressed below.

### A. Likelihood of Success on the Merits

First, a party seeking injunctive relief must show a likelihood of success on the merits of his claim. "A movant's showing of likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020) (quotation marks omitted). A "better than negligible" likelihood of success is not enough. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762−63 (7th

Cir. 2020). "A 'strong' showing ... does not mean proof by a preponderance .... But it normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.*

The Court assumes for purposes of the motion for a preliminary injunction, and the defendants do not dispute, that Mr. Rose's asthma is a serious medical need. The second element of deliberate indifference requires Mr. Rose to show that his medical providers "either act[ed] or fail[ed] to act in disregard of that risk." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations and citations omitted). Mr. Rose must demonstrate that the defendants made a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). *See also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

The evidence before the Court indicates that Mr. Rose has complained of asthma, breathing problems, and coughing up blood for many years. *See generally* Part I. As the Court explained in its ruling on Mr. Rose's earlier motion for a preliminary injunction, his doctors have not always provided him the specialist-recommended treatment. Specifically, in October of 2022, Dr. Padhye suggested Spiriva, Cetirizine Hcl, Azelastine 0.15% Nasal Spray, and Nucala to treat Mr. Rose's asthma and allergies, but these medications were not provided. *See* dkt. 45-1 at 2. Indeed, it does not appear that his treatment regimen changed at all. *See* dkt. 55-1 at 2. Mr. Rose later saw a pulmonary specialist who, like the allergist, recommended Spiriva and also Flonase. Dkt. 1-1 at 94. Again, Mr. Rose's medications were not changed. After Mr. Rose filed his motion for a preliminary injunction, defendant Dr. Riley reviewed his records and has concluded that a Tudorza inhaler can be prescribed and that Singulair and Nasacort are suitable alternatives for the requested

Cetirizine and Azelastine. Dkt. 55-2. At that time, it was unclear from the records, however, whether Tudorza has been provided to Mr. Rose.

Because Mr. Rose has shown that he has received delayed and sometimes limited care for his serious medical conditions, and because specialists' advice has been ignored in part, he therefore has shown a likelihood of success on the merits of his claims.

### B. Irreparable Harm and Inadequate Remedies at Law

Mr. Rose must also show that he will suffer irreparable harm and that his legal remedies are inadequate. Irreparable harm is "harm that 'cannot be repaired' and for which money compensation is inadequate." *Orr*, 953 F.3d at 502 (quoting *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997)). Mr. Rose must show "that he will *likely* suffer irreparable harm absent obtaining preliminary injunctive relief." *Id.* (cleaned up). Similarly, to show that his legal remedies are inadequate, he must show "that any award would be seriously deficient as compared to the harm suffered." *Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1046 (7th Cir. 2017).

The defendants argue that Mr. Rose cannot support these elements because he has not shown that his lung function has deteriorated because he has not received the treatment recommended by the specialists. But Mr. Rose has presented evidence that he has had trouble breathing and was coughing up blood through much of 2023. Since Mr. Rose filed his previous motion for a preliminary injunction, however, the defendants have provided him with additional treatment. Thus, Mr. Rose focuses his reply in support of his motion on his contention that he has a staph infection in his lungs. Although he provides no medical records to support this contention, Mr. Rose's testimony that he has been suffering from serious breathing problems and has been

coughing up blood is enough at this stage to allow a conclusion that he will suffer irreparable harm and that purely legal remedies would be inadequate.

### C. Balance of Harms

Because Mr. Rose has satisfied the threshold elements of injunctive relief, "the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018).

Here, the balance of harms tips in Mr. Rose's favor. He is suffering from serious breathing problems, coughing up blood, and, based on the record before the Court, he does not appear to be receiving sufficient treatment. Additionally, the vindication of Mr. Rose's constitutional rights serves the public interest. *Jackson v. Wexford of Indiana, LLC*, No. 1:19-cv-3141-JMS-TAB, 2019 WL 5566442, at *3 (S.D. Ind. Oct. 29, 2019) ("More generally, the vindication of constitutional rights serves the public interest.") (collecting cases).

### D. Scope of Relief

Based on the evidence before the Court, all applicable factors weigh in favor of preliminary injunctive relief. Mr. Rose asks to be referred to specialists and that specific medications be provided.

Courts must be cautious when granting preliminary injunctive relief. *Tully v. Okeson*, 977 F.3d 608, 612 (7th Cir. 2020) ("A preliminary injunction is an extraordinary remedy.") (internal quotations and citations omitted); *see also Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) ("A preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.") (internal quotations and citations omitted). That is

particularly so when the plaintiff is requesting that Court order the defendant to take a particular action. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) ("Mandatory preliminary injunctions—those requiring an affirmative act by the defendant—are 'ordinarily cautiously viewed and sparingly issued.'") (internal quotations and citations omitted).

The Prison Litigation Reform Act ("PLRA") adds an additional layer: "Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). The Act reinforces the principle that prison administrators have substantial discretion over the institutions they manage. *Rasho v. Jeffreys*, 22 F.4th 703, 711 (7th Cir. 2022); *see also Scarver v. Litscher*, 434 F.3d 972, 976 (7th Cir. 2006) ("Federal judges must always be circumspect in imposing their ideas about civilized and effective prison administration on state prison officials. The Constitution does not speak with precision to the issue of prison conditions[.]")

Although Mr. Rose requests both specific medications and further specialist consultation, he focuses his reply in support of his motion for a preliminary injunction largely on his contention that he has a staph infection in his lungs. Because it is unclear from the record whether he has such an infection, injunctive relief in the form of an order that he receive a sputum or other appropriate test for infection and treatment if the test indicates infection is appropriate to balance Mr. Rose's need for medical care in the least intrusive way possible as required by the PLRA.

### IV. Conclusion

For the reasons discussed above, Mr. Rose's motion for injunctive relief, dkt. [79], is **GRANTED** to the extent that the defendants shall provide Mr. Rose with a sputum or other appropriate test to evaluate Mr. Rose for staph, yeast, or other infections in his lungs and shall treat

him for any infection that is indicated. It is **DENIED** to the extent that Mr. Rose seeks further specialist consultation. Pursuant to Federal Rule of Civil Procedure 65(d)(1) and *MillerCoors LLC v. Anheuser-Busch Cos.*, 940 F.3d 922 (7th Cir. 2019), the Court will enter the terms of the preliminary injunction set forth in a separate document. This ruling does not preclude Mr. Rose from seeking further injunctive relief if he believes it is necessary.

    **IT IS SO ORDERED.**

Date: 1/7/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

RONALD L. ROSE
213041
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

All Electronically Registered Counsel